UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 04-200-DLB

GRACE RITCHIE                                                                                           PLAINTIFF

vs.                           **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                               DEFENDANT

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Grace Ritchie filed an application for a period of disability and disability insurance benefits (DIB) on September 30, 2002. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on October 20, 2003, in Hazard, Kentucky. On January 12, 2004, ALJ Ronald M. Kayser issued an unfavorable decision, finding that Plaintiff was not under a disability. The Appeals Council denied Plaintiff's request for further review by letter dated April 17, 2004. Plaintiff filed suit in this Court on May 13, 2004; and on July 26, 2004, the Court remanded the case for further hearing due to problems with the original hearing tape. (Doc. #4). ALJ Kayser presided over a supplemental hearing on April 1, 2005; and on July

1

29, 2005, issued a second denial decision. It is from that decision that Plaintiff now appeals.

Plaintiff, who was 53 years old at the time of the second hearing, has a high school equivalency education and alleges an inability to work beginning on September 15, 2001 due to problems with her heart and back, and fibromyalgia. At the hearings before the ALJ, Plaintiff indicated that her pacemaker was working fine; she had stopped smoking; but she was still experiencing fatigue, depression, and a rapid heart rate.

This matter is presently before the Court upon the parties' cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 320). At Steps 2 and 3, the ALJ found that Plaintiff's heart and mental impairments are severe, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 320). At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a limited range of light work. (Tr. 322). Specifically, the ALJ found that Plaintiff can:

> stand/walk/sit up to six hours total in an eight-hour workday and is limited in ability to use the upper extremities, including lifting overhead. She can occasionally climb, balance, stoop, crouch, kneel and crawl. She must avoid even moderate exposure to temperature extremes, vibration, and hazardous machinery as well as working at heights. She must avoid concentrations of dust, fumes, and chemicals.
>
> The mental limitations include moderate limitations in ability to maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. The claimant's restriction in activities of daily living is mild; she has moderate difficulty functioning socially; she has moderate difficulty maintaining concentration, persistence or pace; and she has never experienced repeated episodes of decompensation, each of extended duration.

(Tr. 323).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a redemption center store manager. At Step 5, however, the ALJ found that there are a significant number of jobs Plaintiff can perform, despite her limitations and considering the transferable skills she acquired from her previous work, including production inspector and cashier. (Tr. 323-24). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.   Analysis**

Plaintiff raises several errors on appeal. First, Plaintiff argues that the ALJ erred in failing to consider the opinion of her treating family physician, Dr. Grady Stumbo. Specifically, Plaintiff contends that "not only did the Administrative Law Judge fail to accord greater weight to Dr. Stumbo's opinion, but [he] failed to even discuss Dr. Stumbo's physical or mental RFC form ..." in his written decision. (Doc. #18, p.15). Second, Plaintiff argues that the ALJ erred in assessing her subjective complaints of pain. Third, Plaintiff argues that the ALJ failed to give proper weight to the opinions of Drs. Christopher Catt and Greg Lynch, who performed a consultative psychological examination on June 18, 2004. According to Plaintiff, "[i]t is blatantly apparent that the Administrative Law Judge ignored the entirety of Drs. Catt and Lynch's psychological examination because [he] only briefly mentioned the substance of this examination and did not discuss the numerous restrictions assigned by [them] ..." or their finding of a GAF score of 50. (Doc. #18, p.18). Finally, Plaintiff alleges that, as a combined result of these errors, the hypothetical question posed

4

to the vocational expert at the hearing did not accurately portray her physical and mental impairments.

In response, the Commissioner contends that the administrative decision contains an extensive discussion of Dr. Stumbo's March 21, 2005 opinion, which the ALJ ultimately rejected because it was not supported by objective medical evidence. The Commissioner also notes that the Sixth Circuit has repeatedly held that an ALJ's credibility determination is accorded great deference on appeal; and, in this case, Plaintiff's description of her symptoms was inconsistent with the observations and statements of her medical sources. According to the Commissioner, the ALJ properly rejected the opinion of Dr. Catt (in favor of Drs. Prout and Demaree) because it was not supported by objective medical evidence. Finally, the Commissioner argues that the ALJ's RFC determination was supported by substantial evidence and thus, the hypothetical question to the vocational expert constituted substantial evidence upon which he was entitled to rely. For the reasons that follow, the Court finds no error.

Plaintiff first argues what is commonly referred to in disability proceedings as the "treating physician rule." Under that rule, opinions of physicians who have treated the claimant receive controlling weight if they are: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(d)(2). If the ALJ concludes that either of these criteria are not satisfied, he is required to apply the following factors in determining how much weight to give a treating physician's opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the

5

record as a whole, and the specialization of the treating source...." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ elects not to give controlling weight to a treating physician's opinion, the regulations also require him to provide "good reasons" for his decision. *Id.* *See* 20 C.F.R. § 404.1527(d)(2). That requirement is not dispensed with even where a reviewing court finds that the ALJ's decision, as a whole, is supported by substantial evidence. *Id.*

In this case, Plaintiff claims that the ALJ failed to "assess and weight [sic] the opinion of her longtime treating physician, Dr. Grady Stumbo ...." (Doc. #18, p.14). More particularly, Plaintiff claims that the ALJ failed to consider mental and physical RFC assessments provided by Dr. Stumbo. In those assessments, which were completed on March 21, 2005, Dr. Stumbo limited Plaintiff to: lifting/carrying 10 pounds, standing/walking 2 hours, sitting for 3 hours, and only occasionally twisting, stooping/bending, crouching, and climbing. (Tr. 598-99). Mentally, Dr. Stumbo opined that Plaintiff has a very good ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and a good ability to understand, remember, and carry out very short and simple instructions, understand, remember, and carry out detailed instructions, set realistic goals or make plans independently of others, deal with stress of semiskilled or skilled work, interact appropriately with the general public, and travel in unfamiliar places. (Tr. 600-601). Finally, Dr. Stumbo opined that Plaintiff has a fair ability to remember work-like procedures, maintain attention for 2 hour segments, maintain regular attendance and be punctual with customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from

psychologically-based symptoms, perform at a consistent ace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, be aware of normal hazards and take appropriate precautions, and use public transportation.  (*Id.*).

Contrary to Plaintiff's suggestion, a review of the ALJ's written decision reveals that he did, in fact, consider and weigh Dr. Stumbo's assessments.  Specifically, he noted:

> Exh[ibit] 29F, a residual functional capacity form from treating physician Dr. Stumbo, limits claimant to less than sedentary work.  It is accorded no weight in arriving at a residual functional capacity: nothing in the record supports it other than the claimant's subjective complaints which the physician then extrapolates into "diagnoses."  20 CFR Part 404, Subpart P, Sections 404.1529 and 416.929 discuss the need for medically determinable impairments substantiated by the appropriate tests and laboratory findings such as [sic] to support a finding of a severe disability.  These are lacking herein as all medical evidence of record says her pacemaker is working well and she has no rheumatic disease.  In fact, she states to her doctors from time to time that the pacemaker has worked well but then denies it at hearing.  Dr. Stumbo is unable to cite any objective evidence to support a residual functional capacity for less then sedentary work, nor is there any evidence to support the claimant's assertion that a Dr. Booth from the University of Kentucky Medical Center gave her a less than sedentary residual functional capacity.

(Tr. 322).  The ALJ also noted that he was bound by the Sixth Circuit's holding in *Drummond v. Comm'r of Social Security*, 126 F.3d 837, 841 (6th Cir. 1997), that "absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  Consistent with his previous determination, the ALJ, therefore, assigned Plaintiff a residual functional capacity for a limited range of light work.  (Tr. 322).

7

In this case, the ALJ satisfied the procedural requirements outlined above in rejecting Dr. Stumbo's opinion. First, the ALJ concluded that Dr. Stumbo's RFC assessment was not supported by objective medical evidence, but was rather a reflection of Plaintiff's subjective complaints. He also explained that it was no other evidence of record to support such a restrictive RFC. Under these circumstances, the Court concludes that the ALJ did not err in rejecting Dr. Stumbo's opinion.

Plaintiff also argues that the ALJ erred in assessing her allegations of disabling pain. The Sixth Circuit established a two-prong test for evaluating a claimant's complaints of pain in *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986). Under the first prong of that test, the Court must examine whether there is objective medical evidence of an underlying medical condition. *Id*. at 853. If there is, then the Court must examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Id*.

Plaintiff argues that her allegations were "supported by objective medical evidence of an underlying condition that could reasonably be expected to produce her alleged disabling pain." (Doc. #18, p.17). In support, she notes that: 1) a CT scan of her lumbar spine performed by Dr. Jaya Pampati in August 2003 revealed scoliosis and degenerative arthritis with disc space narrowing below the L3 level (tr. 610), 2) her orthopedic surgeon Dr. Mukut Sharma opined that she has "frozen left shoulder" and lateral epicondylitis of the left elbow (tr. 157), and 3) her complaints of pain, weakness, and fatigue were to be expected in light of the fact that "she has undergone electrophysiology procedures for a

symptomatic third degree atroventricular block for which she had to undergo two separate pacemaker implantations."  (Doc. #18, p.17).

With regard to Plaintiff's back pain, the ALJ noted that an x-ray or CT of Plaintiff's lumbar spine performed by Dr. Pampati in December 2004 revealed no herniation or arthritis; though there was a mild bulging disc.  (Tr. 606-13).[1]  The ALJ also noted that when Dr. Pampati saw Plaintiff one month earlier, on November 22, 2004, his assessment was as follows:

> 1.  This patient does not appear to have any evidence suggestive of acute or active inflammatory arthritis or connective tissue disease.
> 2.  She also does not appear to have any evidence of fibromyalgia.
> 3.  Myofascial pain with underlying degenerative arthritis of the spine is a consideration.

(Tr. 609).  Based upon this evidence, and the lack of evidence of rheumatological disease, the ALJ concluded that "[Plaintiff's] averral of pain at 9 on a 10-scale is not supported and her statement lacks credibility."  (Tr. 322).[2]

A review of the ALJ's written decision, therefore, reveals that he not only considered the totality of the medical evidence, but also relied on the proper legal standards, 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, in assessing Plaintiff's credibility.  (Tr. 323). For these reasons, the Court finds no error.

Finally, Plaintiff argues that the ALJ erred in failing to consider the opinions of state agency psychologists Christopher Catt and Greg Lynch.  Drs. Catt and Lynch jointly

---

[1] The ALJ mistakenly stated that this scan was performed in December 2003.  (Tr. 322).

[2] The Court notes for the sake of completeness that Dr. Sharma performed a one-time consultative examination of Plaintiff on May 9, 2002, at the request of Dr. Stumbo, during which he took x-rays of her left shoulder that were essentially normal.  (Tr. 156-57).  This evidence also supports the ALJ's credibility determination.

9

performed a consultative psychological examination of Plaintiff on June 18, 2004. (Tr. 461-65).  During the exam, Plaintiff reported shopping on a weekly basis, going to Walmart, watching television, visiting with neighbors approximately once a week, and engaging in other social activities with her family.  (Tr. 463).  She also reported frequent irritability, symptoms consistent with panic attacks, significant anticipatory anxiety, and moderate limitations associated with her panic attacks. (Tr. 464).  Based upon their evaluation, Drs. Catt and Lynch diagnosed Plaintiff with panic disorder without agoraphobia, psychosocial stressors moderate-to-severe, and a GAF score of 50.  (Tr. 464-65).  They also offered the following functional capacity assessment:

> Ms. Ritchie seems to have adequate capacity to understand instructions for performance of both simple and complex tasks.  Her capacity to sustain attention and concentration for performance of simple, repetitive tasks seems variable and negatively affected by varying levels of pain and anxiety.  Ms. Ritchie seems to have limited ability to tolerate stress and pressure of day-to-day employment at this time. [H]er capacity to interact appropriately with fellow workers and supervisors seems adequate for small group situations only.

(Tr. 465).

Contrary to Plaintiff's argument that the ALJ completely disregarded this evidence, a review of the ALJ's written decision reveals that he expressly considered Dr. Catt's assessment in evaluating the severity of Plaintiff's mental impairment. Specifically, the ALJ noted:

> A consultative examination by Dr. Christopher Catt on 06/18/04 states the claimant is married, was dressed appropriately, has no history of psychiatric treatment or hospitalizations, and takes Xanax 0.25 mg. as needed.  She pays the bills, shops, and watches television.  She latest [sic] worked at Quality Stamp for 14 years until 2001 when the company went out of business.  Her alleged onset date is September 2001.  Diagnosis: panic disorder without agoraphobia and a functioning level of 50 (on a 100 scale).

> Treating physician Dr. Stumbo treats her with Xanax and Sinequan but with no referral for mental health treatment.

(Tr. 322). In determining Plaintiff's RFC, however, the ALJ ultimately adopted the concurring opinions of state agency reviewers Drs. H. Thompson Prout and Ann Demaree. Mental RFC assessments completed by Prout and Demaree indicated that Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 486-89, 525-27). Important for purposes of this appeal, Dr. Prout deferred to Dr. Catt in finding that Plaintiff is able to: understand, remember, and sustain attention with simple, even-paced tasks; relate adequately in less crowded situations; and adapt to expected, routine task demands. (Tr. 488). All of these restrictions were reflected in the ALJ's hypothetical question to the vocational expert. (Tr. 351). Plaintiff's argument that the ALJ ignored the opinions of Drs. Catt and Lynch is, therefore, without merit.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #18) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #20) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 26th day of July, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-04-200-RitchieMOO.wpd